IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| COUNTY OF ANOKA, MINNESOTA, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> TYLER TECHNOLOGIES, INC., § <br> § <br> Defendant. § | <br><br><br><br>CASE NO. 0:20-cv-01524<br><br>JURY TRIAL DEMANDED<br><br> |

### DEFENDANT TYLER TECHNOLOGIES, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Defendant Tyler Technologies, Inc. ("Tyler") submits this Answer, Affirmative Defenses and Counterclaims in connection with the Complaint (the "Complaint") filed by Plaintiff County of Anoka, Minnesota. Tyler denies each and every allegation, matter and thing set forth in the Complaint, except as otherwise expressly admitted, qualified or answered herein.

### ANSWER[1]

1. Tyler admits the allegations in paragraph 1 of the Complaint.

2. Tyler admits the allegations in paragraph 2 of the Complaint.

3. Tyler admits that it consents to the Court exercising specific jurisdiction over it in this case. Tyler denies the remaining allegations in paragraph 3 of the Complaint.

4. Tyler admits the allegations in paragraph 4 of the Complaint.

5. Tyler admits the allegations in the first and second sentences of paragraph 5 of the Complaint. Tyler is without knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence of paragraph 5 of the Complaint. To the extent a response is required, Tyler denies the allegations.

---

[1] The headings in the Complaint are not allegations and do not require a response. To the extent a response is required to such headings, Tyler denies the allegations.

6. Tyler denies the allegations in paragraph 6 of the Complaint.

7. Tyler denies the allegations in paragraph 7 of the Complaint.

8. Tyler denies the allegations in paragraph 8 of the Complaint.

9. Tyler denies the allegations in the first sentence of paragraph 9 of the Complaint. Tyler admits the allegations in the second and third sentences of paragraph 9 of the Complaint.

10. Tyler denies the allegations in paragraph 10 of the Complaint.

11. Tyler admits that Addendum No. 1 reduced the amount of professional services fees to be paid by Anoka pursuant to the Agreement, but otherwise denies the allegations in Paragraph 11 of the Complaint.

12. Tyler denies the allegations in the first sentence of paragraph 12 of the Complaint. The second sentence of paragraph 12 of the Complaint contains a quotation from the parties' Agreement and Tyler respectfully refers the Court to Exhibit A to the Complaint for its complete and correct contents and denies any allegation inconsistent therewith. Tyler denies the remaining allegations in paragraph 12 of the Complaint.

13. Tyler denies the allegations in paragraph 13 of the Complaint.

14. Tyler admits that the parties entered into Addendum No. 2 on August 20, 2019, but otherwise denies the allegations in the first sentence of paragraph 14 of the Complaint. Tyler admits the allegations in the second sentence of paragraph 14 of the Complaint.

15. Tyler admits that the quoted language in paragraph 15 of the Complaint appears in Addendum No. 2, but otherwise denies the allegations in paragraph 15 of the Complaint.

16. Tyler admits that the quoted language in paragraph 16 of the Complaint appears in Addendum No. 2.

17. Tyler denies the allegations in paragraph 17 of the Complaint.

18. Tyler denies the allegations in paragraph 18 of the Complaint.

19. Tyler denies the allegations in paragraph 19 of the Complaint.

20. Tyler admits that it received correspondence from Anoka dated February 21, 2020, and that a true and correct copy of that letter was attached to the Complaint as Exhibit D, but otherwise denies the remaining allegations in paragraph 20 of the Complaint.

21. Tyler admits that the February 21, 2020 correspondence attached as Exhibit D to the Complaint speaks for itself, but otherwise denies the allegations in paragraph 21 of the Complaint.

22. Tyler denies the allegations in paragraph 22 of the Complaint.

23. Tyler denies the allegations in paragraph 23 of the Complaint.

24. Paragraph 24 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 24 of the Complaint.

25. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

26. Tyler denies the allegations in paragraph 26 of the Complaint.

27. Tyler denies the allegations in paragraph 27 of the Complaint.

28. The first sentence of paragraph 28 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in the first sentence of paragraph 28 of the Complaint. Tyler denies the allegations in the second sentence of paragraph 28 of the Complaint.

29. Tyler denies the allegations in paragraph 29 of the Complaint.

30. Paragraph 30 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 30 of the Complaint.

31. Tyler incorporates the responses in the preceding paragraphs as if fully set forth in this Answer.

32. Paragraph 32 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 32 of the Complaint.

33. Paragraph 33 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Tyler denies the allegations in paragraph 33 of the Complaint.

34. To the extent any response is required, Tyler denies that Anoka is entitled to any of the relief requested in its prayer for relief on pages 7-8 of the Complaint.

## AFFIRMATIVE DEFENSES

Tyler asserts the following affirmative and additional defenses, without assuming the burden of proof for any issues to which the applicable law places the burden on Anoka. Moreover, nothing stated herein is intended to be construed as an acknowledgement that any particular issue or subject matter is relevant to Anoka's allegations. Furthermore, all defenses are pled in the alternative, and none constitutes an admission of liability or that Anoka is entitled to relief on its claims.

1. The Complaint fails to state a claim against Tyler on which relief can be granted.

2. Anoka has waived any right to seek damages pursuant to any purported cause of action stated against Tyler.

3. Anoka's claims are barred, in whole or in part, by the equitable doctrine of estoppel.

4. Anoka's claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

5. Anoka's claims are barred, in whole or in part, by the limitation of liabilities provisions in the Agreement.

6. Anoka's claims are barred, in whole or in part, because Tyler has complied with the Agreement.

7. Anoka's claims are barred, in whole or in part, by Anoka's prior breaches of the Agreement, including its failure to cooperate and to comply with the processes and procedures therein.

8. If Anoka has sustained damages by reason of the allegations in the Complaint, which is expressly denied, then Anoka may not recover for such damages because, by its own acts and omissions, it has failed to properly mitigate such damages.

9. Anoka has not sustained any damages as a consequence of the conduct alleged against Tyler in the Complaint and can state no claim for damages against Tyler based thereon.

10. To the extent Anoka has incurred any damages, which is expressly denied, such alleged damages were not proximately or legally caused by Tyler.

11. Any alleged loss or damage that Anoka claims to have sustained is speculative and uncertain, and therefore is not compensable.

12. Tyler reserves the right to assert additional defenses in the event discovery indicates they are appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Tyler prays that the Court enter Judgment:

A. Denying Anoka any relief and dismissing the Complaint in its entirety with prejudice;

B. Awarding Tyler attorneys' fees and related expenses incurred herein;

C. Awarding costs of suit included herein; and

D. Awarding Tyler such other relief as the Court may deem necessary.

## RESERVATION OF RIGHTS

Tyler reserves the right to amend and/or supplement its Answer and Affirmative Defenses. Tyler reserves all rights to raise additional defenses not asserted herein that may be revealed during the course of discovery or other investigation, or that otherwise are found applicable to it.

## COUNTERCLAIMS

Counter-Plaintiff Tyler Technologies, Inc. ("Tyler") files these Counterclaims against Counter-Defendant County of Anoka, Minnesota ("Anoka"). In support of its claims herein, Tyler respectfully alleges the following:

### I. PARTIES

1. Tyler is a Delaware corporation that maintains a principal place of business at 5101 Tennyson Parkway, Plano, Texas 75024. Tyler is the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector. Tyler has more than 26,000 successful installations across more than 10,000 sites, with clients in all 50 states, Canada, the Caribbean, Australia, and other international locations. Tyler offers four solution groups, including Public Administration, Courts and Public Safety, K-12 Education and Transformative Technology. Within Tyler's Public Administration solutions, Tyler provides solutions for the core functions of government: appraisal, tax collections, records, community development, utility billing, asset maintenance, finance, and administration. Tyler's appraisal and tax software solutions are in active use in hundreds of jurisdictions across the country and help manage more than 97 million parcels of property and produce more than 20 million assessment notices each year.

2. Defendant Anoka is a political subdivision of the State of Minnesota. The county is located in central Minnesota just north of the Minneapolis-St. Paul metropolitan area and is the fourth most populous county in Minnesota. Anoka has appeared in this action and can be served through its counsel of record.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Tyler and Anoka are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Anoka is located in this District and a substantial part of the events or omissions giving rise to Tyler's claims occurred in this District. Furthermore, the parties, by agreement, consented to specific personal jurisdiction and the exclusive jurisdiction of the federal or state courts located in Minnesota.

### III.  FACTUAL BACKGROUND

5. On April 27, 2015, Anoka issued a Request for Proposal ("RFP"), seeking proposals for a two-phase project to replace and upgrade its existing property tax assessment software. Phase 1 of the project involved a detailed assessment of Anoka's needs and a definition of the proposed scope of implementation during Phase 2. Tyler was awarded the contract for Phase 1 of the project and worked with Anoka for almost a year to identify, assess and detail the necessary scope of work to replace Anoka's system. The Phase 1 deliverable was an over 900-page Statement of Work ("SOW") detailing the anticipated scope and details for Phase 2. On February 23, 2017, Tyler and Anoka entered into a Phase 2 Services Agreement (the "Agreement")[2], whereby Tyler contracted to provide certain services to Anoka in order to implement Tyler's Integrated Property Assessment, Tax, Land and Vital Records System (the "System"). The System is designed to allow Anoka to assess real property for the purpose of determining taxable value and to collect the required taxes. The 900-plus-page SOW developed in Phase 1 was attached to and incorporated into the Agreement in order to define the proper scope of work.

6. The Agreement requires Anoka to "use all reasonable efforts to cooperate with and assist [Tyler] as may be reasonably required to meet the agreed upon project deadlines and other milestones for implementation." Agreement, p. 3. It further provides that Anoka is required to work with Tyler to schedule implementation-related services and expressly notes that Tyler will not be liable for any failure to meet deadlines caused by a failure of Anoka to cooperate and assist. *See id.* The Agreement contemplated that the system go-live might occur

---

[2]  The Agreement is attached to Anoka's Complaint as Exhibit A.

as early as July 2018, but made no firm commitment on the project's precise schedule.  *See id* at 3-4.

7.  The Agreement also includes various disclaimers and limitations of liability.  For example, Section E.2 of the Agreement expressly disclaims "all warranties and conditions, whether express, implied or statutory, including but not limited to, any implied warranties, duties, or conditions of merchantability or fitness for a particular purpose."  *See id.* at 5.  In addition, Section E.3 limits Tyler's liability for any alleged damages arising out of the Agreement to the actual direct damages suffered or one-and-one-half times the amount paid under the Agreement, not to exceed $4.8 million.  *Id.*

8.  In addition, Section E.4 of the Agreement provides that "in no event shall [Tyler] be liable for any special, incidental, punitive, indirect, or consequential damages whatsoever, including but not limited to loss of tax revenue or claims related to valuation of property, even if [Tyler has] been advised of the possibility of such damages."  *Id.* at 5.

9.  In the event of a dispute between the parties, Anoka contractually agreed to "cooperate with [Tyler] in trying to reasonably resolve all disputes."  *Id.* at 6.  Upon request, the parties are required to appoint senior representatives to meet and engage in good faith negotiations.  *Id.*  If those negotiations fail to resolve the dispute, the parties agreed to the exclusive jurisdiction of the state and federal courts in Minnesota.  *Id.*

10.  The Agreement contemplates certain "milestones" in terms of deliverables and anticipates that invoices will be submitted by Tyler following acceptance of each milestone.  Agreement, at 4, 15.  The Agreement further provides that "[a]cceptance of a payment milestone shall not be unreasonably withheld" by Anoka.  *Id.* at 15-16.

11.  As part of the Agreement, the parties also signed a Software as a Service Agreement ("SaaS Agreement") that outlines, *inter alia*, the parties' ongoing obligations after the software was live, including Tyler's ongoing maintenance obligations.  *See id.* at 26-42 (Exhibit H).  One advantage to Tyler's software systems is that Tyler incorporates an "Evergreen

philosophy" in its maintenance approach. Tyler regularly makes upgrades and improvements to its software based on feedback from its various clients, industry and regulatory or legislative trends, and evolving technology. The SaaS Agreement provides not only for routine maintenance of the System (like resolving software bugs), it also entitles Anoka to obtain all upgrades and improvements to the software for one annual fee.

12. The SaaS Agreement also provides that the software will perform "without Defects" and provides that Tyler will use reasonable efforts, consistent with industry standards, to cure any Defect in accordance with the maintenance and support process outlined therein. *See id.* at 28. "Defect" is defined as follows: "a failure of the Tyler Software to substantially conform to the functional descriptions set forth in [Tyler's] written proposal to [Anoka] or their functional equivalent." *Id.* at 26. Defects, including various bugs and fixes, are common and expected in software implementations and production use, especially right after a System like the one implemented for Anoka goes live.

13. On August 20, 2018, Anoka and Tyler mutually agreed to Addendum No. 1 to the Agreement.[3] As agreed to by both parties, the Addendum extended the date for final production cut-over for the project to sometime between July 12 and August 5, 2019. Addendum No. 1 at 1. Tyler agreed to "complete all of the work identified in the Project Plan according to the High Level Project Schedule," but the parties recognized that "the Target Dates shown on the High Level Project Schedule may need to be revised in the future as work progresses." *Id.* at 5. Anoka agreed to "work in good faith to discuss revisions to the Target Dates and/or High Level Project Schedule as they become necessary." *Id.* In addition, as a gesture of good faith and an accommodation for the extension, Tyler agreed to a discount for upcoming fees pursuant to the Agreement, which amounted to a total discount of $499,998.00 over five years. *Id.* at 2-3. And, Tyler agreed to secure an extension of its performance bond at no cost to Anoka and to allocate additional services to Anoka at no cost as well. *Id.* at 5.

---

[3]   Addendum No. 1 is attached to Anoka's Complaint as Exhibit B.

14. Tyler continued to work diligently to complete the implementation within the new, agreed-upon time period. On August 19, 2019, Anoka and Tyler mutually agreed to Addendum No. 2 to the Agreement.[4] As agreed to by both parties, that Addendum further extended the deadline for go-live to November 12, 2019. Addendum No. 2 at 1. As a further accommodation for the extension, Tyler agreed to an additional $100,000 of discounts off future payments required by the Agreement. *Id.* at 2. Again, Anoka agreed to work with Tyler in good faith to discuss revisions to the schedule as they became necessary. *Id.* at 3.

15. The parties mutually agreed to an additional extension to November 21, 2019. The System went live on that jointly selected date and has been operational since that time. As anticipated and as is common in complex implementations, certain functionality was deprioritized or otherwise scheduled for post-go-live delivery, and there were also new issues that arose and had to be addressed immediately after go-live, such as reported Defects and refresher training needs. Defects were supposed to be addressed in the manner outlined in the SaaS Agreement, which requires written notice, a prioritization of issues, and an opportunity for Tyler to address any confirmed Defects. Normally such Defects would be handed over to Tyler's support division as contemplated in the SaaS Agreement. In Anoka's case, however, due to the agreed-upon functionality to be delivered post-go-live, Tyler had certain members of its implementation team remain engaged to not only complete those deliverables, but to help triage "Defects" as they were reported.

16. Anoka also raised a number of additional issues during the post-go-live period that were actually requests to modify the System and would require additional development work from Tyler that was outside the scope of the project.

17. Instead of recognizing that (i) the parties had deprioritized certain functionality for go-live and also agreed to certain post-go-live deliverables; (ii) that post-go-live issues are expected during initial operational use of systems like the one implemented for Anoka; (iii) that

---

[4] Addendum No. 2 is attached to Anoka's Complaint as Exhibit C.

the Agreement provided a mechanism to address "Defects"; and (iv) that scope changes necessarily required new development work, Anoka began to contend that the software simply did not work. That contention, of course, is belied (at a minimum) by the fact that the software has gone live as agreed and is in daily operational use.

18.     Nonetheless, on February 21, 2020, the Anoka County Attorney wrote to Tyler asserting that "Tyler has not complied with its contractual obligations" and had not completed "all the work necessary to make Anoka County's system fully functional."[5]  That letter included a specific listing of items that Anoka believed were incomplete.

19.     Tyler responded to the February 21, 2020 letter, disputing Anoka's assertions of breach and outlining a path forward to address the issues Anoka had identified.  Tyler continued to work diligently pursuant to the Agreement to address those outstanding issues.  By early May 2020 (a timeframe agreed to by Anoka's project team), Tyler had addressed and completed all but one sub-issue identified in Anoka's February 21, 2020 letter.

20.     Nevertheless, on May 1, 2020, Anoka's attorney again asserted that the system "still does not work."  Anoka threatened to file a lawsuit against Tyler unless Tyler completed "all work described in the parties' contract and addenda" by June 15, 2020.  The "work" that Anoka expected to be completed continued to be a moving target, with Anoka identifying 121 new "issues" that were not included in its initial February 21, 2020 letter.  The vast majority of these items were post-go-live "Defects" that were to be addressed under the provisions of the SaaS Agreement.

21.     Tyler again responded to the May 1 letter, disputing Anoka's factual allegations and attempting to re-explain the parties' prior understandings and obligations under the applicable terms of the Agreement.  Tyler also reiterated that it was addressing remaining functional deliverables and newly identified issues with a heightened sense of urgency, going above and beyond its contractual commitments.  Tyler also identified the various scope changes

---

[5]   Anoka's February 21, 2020 letter is attached to Anoka's Complaint as Exhibit D.

Anoka had made. Thus, the suggestion that Tyler was somehow failing in its performance, much less that it was obligated to address these issues by a date certain, i.e. June 15, 2020, was flawed.

22. Moreover, Anoka's allegations ignored its own role in issue resolution. Tyler would frequently resolve an issue and make it available to Anoka for testing, yet Anoka's team would not complete the necessary testing to confirm the fix. Some of the issues Anoka listed had been awaiting testing since as early as September 2019. As of May 2020, there were more than 100 items still awaiting testing by the County.

23. Anoka continued to identify new issues even after its May 1 letter, to request additional scope changes, and to delay in providing input or feedback to Tyler on some of the very same issues it was accusing Tyler of not completing. Anoka's approach to issue reporting actions was directly contrary to the manner in which the Agreement was intended to work and the process agreed to therein, and seemed designed to impede Tyler's ability to satisfy Anoka's demands.

24. Tyler repeatedly asked Anoka to engage in the contractual dispute resolution process. Anoka finally agreed to an initial call with appointed senior representatives, who met on May 27, 2020. During that call, Anoka's representatives finally articulated a meaningful definition for the work they expected to be completed by their June 15, 2020 "deadline." Tyler confirmed that it would deliver that functionality by the "deadline," assuming timely cooperation by Anoka. Among other efforts, the President of Tyler's Appraisal & Tax division met multiple times per week with the Anoka Project Sponsor to outline what was being delivered and when, with the Project Sponsor offering no objection to those updates. To the contrary, she requested additional assistance on other issues from Tyler, which was provided.

25. Nonetheless, during a meeting on June 10, 2020, Anoka leadership advised Tyler that Anoka no longer defined the work due by June 15 as it had been defined on the May 27 call. Instead, the County declared an entirely contradictory definition of the work due, a definition

that again seemed designed to ensure that Tyler would not be able to achieve it, and one that is inconsistent with the obligations and procedures set forth under the Agreement.

26. Despite Tyler's diligent efforts to address outstanding issues, Anoka continued to maintain that Tyler has breached the contract and refused to participate as required under the contractual dispute resolution process. Moreover, in direct contravention of the express limitation of liabilities in the Agreement, Anoka repeatedly asserted that it is entitled to various but vaguely described "damages."

27. Anoka also consistently indicated that it will not accept any payment milestones or otherwise pay any invoices issued until all of the outstanding "Defects" and issues have been resolved, even though that position is not consistent with the milestone definitions set out in the Agreement. As a result, Tyler currently has performed over $1.5 million of services for Anoka that Anoka has not paid for.

## VI.  CAUSES OF ACTION

### COUNT I. – BREACH OF CONTRACT

28. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

29. Tyler and Anoka entered into a valid, binding, and enforceable contract as described herein and as evidenced by the Agreement signed by the parties, including the SOW, the SaaS Agreement, Addendum No. 1, Addendum No. 2, and other relevant ancillary documents.

30. Tyler performed its obligations under the contract and at all relevant times, Tyler has been willing and able to perform its obligations under the Agreement.

31. Anoka has materially breached the contract in numerous ways, including, without limitation, through the following actions and inaction:

32. Anoka has repudiated its cooperation obligations under the Agreement, and, despite repeated requests, Anoka has failed to cooperate in the implementation of the project, thereby breaching the Agreement;

33. Anoka has failed to follow the appropriate procedures for addressing a Defect pursuant to the SaaS Agreement and has breached that portion of the Agreement as well;

34. Anoka has unreasonably withheld approval for various payment milestones and made clear that it would not pay any invoices while "issues" are open, in violation of the Agreement; and

35. Anoka has failed to participate in good faith in the contractually required dispute resolution process.

36. As a direct and proximate result of Anoka's material breaches of contract, Tyler has suffered damages and is entitled, among other things, to recover its damages and/or receive equitable relief, in an amount to be determined at trial.

## COUNT II. – DECLARATORY RELIEF

37. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

38. Pursuant to 28 U.S.C. § 2201, Tyler seeks the following declaratory relief from this Court, declaring Tyler's rights pursuant to the Agreement:

39. Tyler's actions in connection with the implementation of the System have been consistent with the obligations imposed pursuant to the Agreement, and Tyler has not breached the Agreement;

40. The limitation of liability provisions (including the damages exclusions) in the Agreement are binding and enforceable on Anoka and prevent Anoka from asserting a claim for or recovering damages for any alleged delay or reduction in the collection of tax revenue, in addition to other damages that do not constitute actual direct damages;

41. Tyler's obligation to provide post-go-live deliverables and to address Defects, as that term is defined by the Agreement, is limited to the provisions of that Agreement, which is binding and enforceable;

42. The manner in which Tyler addressed Anoka's post-go-live deliverables and Defects is consistent with the provisions of the Agreement and was not a breach of contract; and

43. The Agreement prevents Anoka from unreasonably withholding approval of payment milestones or otherwise refusing to pay for services previously rendered pursuant to the Agreement.

### COUNT III. – UNJUST ENRICHMENT

44. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

45. Tyler conferred a significant benefit on Anoka by providing over $1.5 million of professional services to Anoka. Anoka was aware that it was receiving the benefit and that those services had value. Anoka was aware that Tyler expected to be paid for the services, yet Anoka has illegally and unlawfully retained the benefits of Tyler's services without paying for such services. Under the circumstances, it would be unjust to allow Anoka to retain the benefit of those services without making payment to Tyler.

46. Anoka's lack of payment for Tyler's services has directly and proximately caused damage to Tyler in excess of $1.5 million.

### COUNT IV. – BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

47. Tyler re-alleges and incorporates the allegations in all previous paragraphs as if expressly set forth herein.

48. Anoka's actions, including but not limited to failing to cooperate in the implementation of the project and unreasonably withholding approval of payment milestones, have unjustifiably deprived Tyler of the benefits of the Agreement and have breached the

implied covenant of good faith and fair dealing between parties to an agreement under Minnesota law.

49. Anoka's breaches have directly and proximately caused damages to Tyler in excess of $1.5 million.

## PRAYER FOR RELIEF

**WHEREFORE,** Tyler requests that this Court grant it judgment against Anoka and award to Tyler:

(i). Tyler's actual damages in excess of the minimum jurisdictional limits of this Court;

(ii). the declaratory relief outlined above;

(iii). pre-judgment interest as may be provided by law;

(iv). necessary and reasonable attorneys' fees and costs of court through trial and appeal of this action;

(v). post-judgment interest at the highest lawful rate from the date of judgment until such judgment is satisfied; and

(vi). such other and further relief to which Tyler may be entitled.

## DEMAND FOR JURY TRIAL

Counter-Plaintiff Tyler demands a trial by jury on all counts and on all issues so triable.

|  |  |
|---|---|
| Dated: July 13, 2020 | By:   /s/  *Barry M. Landy*<br>Barry M. Landy (MN Bar #0391307) |

**CIRESI CONLIN LLP**
Barry M. Landy (MN #0391307)
Kyle W. Wislocky (MN #393492)
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
Phone: (612) 361-8200
Fax: (612) 361-8217
 E-mail: BML@ciresiconlin.com
 E-mail: KWW@ciresiconlin.com

Beth W. Petronio (TX #00797664) (pro hac pending)
**K&L GATES, LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5500
Fax: (214) 939-5849
E-mail: beth.petronio@klgates.com

**ATTORNEYS FOR DEFENDANT**
**TYLER TECHNOLOGIES, INC.**

**TYLER TECHNOLOGIES, INC.'S ANSWER,**
<u>**AFFIRMATIVE DEFENSES AND COUNTERCLAIMS – Page 17**</u>