**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| County of Anoka, | Case No. 20-cv-1524 PAM/ECW |
| Plaintiff, | |
| v. | **STIPULATION GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION ("ESI")** |
| Tyler Technologies, Inc., | |
| Defendant. | |

Plaintiff Tyler Technologies, Inc. and Defendant County of Anoka (collectively, the "Parties" and each a "Party"), by their respective attorneys of record, hereby stipulate and agree to the following related to the collection and production of electronically stored information ("ESI") and hardcopy documents during the pendency of this litigation to facilitate the just, speedy, and inexpensive conduct of discovery (hereinafter, "ESI Stipulation").

**1.      SCOPE OF PRODUCTION OF DOCUMENTS AND ESI**

1.1     <u>File Types</u>. The parties shall have no obligation to collect, review, or produce any ESI with a file type enumerated in Exhibit A.

1.2     <u>Privileged Documents and ESI.</u> To the extent that a party reasonably determines that one or more responsive documents are not discoverable because it is subject to the attorney-client communication privilege or work product doctrine, or otherwise not discoverable on the basis of a recognized protection or privilege (collectively, the "privileges" and each a "privilege"), the party shall produce within forty-five (45) days of each production of the documents a log of documents withheld on the basis of privilege treating each document withheld separately, that sets

forth: (a) the nature of the privilege(s) or other protection claimed; (b) the factual basis for the privilege(s) or other protection claimed; (c) the date of the document; (d) the name of the author(s)/addresser, addressee(s) and all recipients of the document (with respect to e-mail threads, the author/addresser, addressee(s) and recipients of the primary email will be set forth in the author/addresser, addressee(s) and recipient fields of the log) and whether any person identified is an attorney or an employee of any Defendants' legal department; (e) a description of the general subject matter contained in the document and the type of document (*e.g.*, letter, memorandum, handwritten notes) sufficient to allow the receiving party to assess the claimed Privilege and/or to allow the Court to rule upon the applicability of the claimed protection; and (f) the custodian of the document. If additional time is required to generate a privilege log, the parties shall meet and confer on the timing of the log and any remaining dispute shall be submitted to the Court for resolution.

  The parties, however, agree that privileged communications solely between the parties and their outside litigation counsel retained for purposes of this or related litigation, solely between and among outside litigation counsel retained for purposes of this or related litigation, or documents prepared solely by or for outside litigation counsel for the parties retained for purposes of this or related litigation, and created after January 1, 2018, do not need to be included on the log. Documents dated after January 1, 2018, and determined to be non-privileged and responsive after review, even if between the parties and outside litigation counsel, must still be produced. The parties reserve the right, for good cause shown, to revisit the scope of communications that need to be logged or need not be logged based on the scope of merits discovery and the burden of logging such communications, which cannot be determined as of the date of this stipulation. Notwithstanding the assertion of an objection, any purportedly privileged document containing

non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself, and also listed on the privilege log to be provided pursuant to this paragraph. A party need include only one entry on the log to identify a single E-mail Thread (as defined below) that contains multiple e-mails with privileged information in the same document; provided, however, that disclosure must be made that such e-mails are part of an e-mail thread and that if any information contained in such thread is not privileged, the remainder of e-mail thread must be produced in redacted form.

After the receipt of a privilege log, any Party may dispute a claim of privilege, however, prior to any submission to the Court for an *in camera* review, the Party disputing a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons for its assertion that the documents are not privileged. Documents with the same reasons for assertion of non-privilege may be grouped. Within seven (7) business days, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege. The Party seeking to support the claim of privilege may request an extension of the 7-day time period from the contesting Party based upon a good faith representation that the volume of documents contested is too large to address within the 7-day time frame, such extension not to be unreasonably withheld. If the Parties cannot agree to an extension, the issue may be expeditiously brought to the Court for resolution via telephonic conference. The Parties will then meet and confer in good faith as to the claims of privilege. If agreement cannot be reached after the meet and confer, any party shall promptly submit the dispute to the Court, as provided by the Court's Local Rules and procedures, for a determination as to privilege. Redacted documents shall be logged in the same manner and time frame as privileged documents.

1.3     <u>Redactions</u>. If a party deems it necessary to redact any material for privilege or other reason, the Producing Party shall either produce the redacted file in the reasonably useable form set out in Section 2 or shall produce the redacted copy in native format. Documents that are to be produced in native format, but that require redactions, may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is an audio or video file or spreadsheet), the producing party shall produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information should be extracted prior to modification such that metadata information associated with that file should remain unchanged, unless it also requires redaction.

1.4     <u>E-mails and Attachments</u>. The parties agree that if any e-mail is responsive to Plaintiff's document request, all attachments to that e-mail shall be deemed responsive to that request. Likewise, if any attachment to an e-mail is responsive to Plaintiff's document request, all portions of the e-mail to which it is attached and all other attachments to that e-mail shall be deemed responsive to that request. To the extent that a Defendant reasonably determines that e-mail or related attachments that are responsive to Plaintiff's document request are not discoverable because they are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment withheld separately that sets forth the information required by Paragraph 1.2 above, subject to the logging limitations of Paragraph 1.2 above.

E-mail Threads are e-mail communications that, within the same e-mail string, contain prior or lesser-included e-mail communications that also may exist separately in the Party's electronic files. A most inclusive e-mail thread is one that contains all of the prior or lesser-included e-mails, including attachments, for that branch of the e-mail thread. The Producing Party

will produce the most inclusive e- mail thread and all prior or lesser included e-mail threads that were collected and identified as responsive and not privileged.

1.5 <u>OCR</u>. OCR software should be set to the highest quality setting during processing. Documents containing foreign language text will be OCR'd using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto- rotation" should be turned on or off during the OCR process, as appropriate, in order to produce the best OCR results possible.

**2.    PRODUCTION FORMAT**

2.1 The parties agree that that they will produce all documents and ESI in the imaged format as set forth below:

(a) <u>TIFFs</u>. Except as otherwise provided for herein, the parties will produce all documents and ESI as black-and-white, single page Group IV TIFFs, 300 DPI and 8 ½ x 11 inch page size. Each image file will have a unique file name that shall be the Bates number of the page except for images originally in color. Documents or records produced in non-native format and containing color (for example, graphs, pictures, or color marketing materials) will be produced in the above format but in color or as color JPEG files. This provision does not apply to documents solely containing color logos, signatures, watermarks, or letterhead. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Production ("Bates") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

1. be consistent across the production;
2. contain no special characters; and
3. be numerically sequential within a given file.

(b)     <u>Production of Specific File Types</u>. When producing files in native format, the native files are to be named with a unique production number assigned to the document, with the original filename to be included in the FileName metadata field. For each natively produced file, a single-page TIFF placeholder should be included. The placeholder should contain the filename of the document as well as language indicating that the document was produced in native form, and it should be endorsed with the confidentiality legend and Bates number.

Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (i.e., not one *.txt file per *.tif image). Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows. Where ESI contains text that has been redacted under an assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file- level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-16LE or UTF-8 text with Byte Order Mark files, in a best effort to preserve the integrity and full character set for any non-English text, and with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file. The text file shall contain image keys/Bates numbers for each page. The parties will produce the following specific file types in the following manner:

        1.     <u>E-mails</u>: E-mails will be produced with the BCC line displayed.

        2.     <u>Word Processing Files</u>: The parties will produce word processing files, including without limitation Microsoft Word, as TIFF images with the TIFF image displaying all information contained in the

       original file, including but not limited to tracked changes, hidden text, and comments.

3.    Spreadsheets: The parties will produce spreadsheets in native format with a TIFF placeholder.

4.    Presentation Files: The parties will produce presentation files, including without limitation Microsoft PowerPoint files, in native format with a TIFF placeholder. If produced in TIFF due to redactions then the TIFF image will display all information contained in the original file, including but not limited to comments, hidden slides, speakers' notes, and similar data in such files.

5.    Databases, Structured, Aggregated or Application Data: To the extent there are any dynamic databases for which document extraction would be substantially burdensome and/or the extracted format is not usable, the parties will meet and confer to discuss how the data should be produced. If one or more other formats of electronically-stored information come to light that due to their complex nature may not be appropriate for production as TIFF images, the parties will meet and confer in good faith to discuss a mutually agreeable production format or formats. In connection with any such meet and confer, Plaintiffs may request reasonable information to evaluate the best method and format of production and Defendants shall respond reasonably and in good faith to any such request.

6.    Dates and file-paths: Documents produced as TIFF files containing auto-populating fields, such as dates and file-paths, shall be produced, wherever possible, with the field code visible on the rendered TIFF (*e.g.*, #DATE, or equivalent), as opposed to having the field code populated at the time that the document was imaged. The metadata shall not be changed.

7.    Compressed Files: Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

8.    Encrypted Files: The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

9.    SAS Files: The parties will produce SAS files in their native format and not as files converted to excel or .csv.

          10. <u>Other Files</u>: Audio files, video files and other files not suitable for production as TIFF images will be produced in native format.

(c)    <u>Scanned Documents</u>. In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hardcopy documents should be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

In the case of an organized compilation of separate hardcopy document—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

(d)    <u>Extracted text and OCR-Text Searchable Files</u>. For ESI, extracted text shall be produced directly from the native file where technically possible. Documents for which extracted text cannot be rendered, will be OCR'd to provide searchable text. The file name of each text file should correspond to the file name of the first TIFF file of the document with which it is associated, including the corresponding Bates number. The text files will not contain redacted portions of the documents.

(e)    <u>Embedded Objects</u>. OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as attachments to the parent document unless the containing file is produced in native format, in which case the embedded objects shall be produced as part of the native file. The obligation to separate out embedded objects shall not apply to signature blocks.

(f) <u>Foreign Language Documents</u>. Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), along with all known existing translations of the document.

(g) <u>Metadata and Objective Coding Fields</u>. The parties shall provide the Metadata fields set forth in Exhibit B for all ESI to the extent such fields exist for that document. The Bates number identified in objective coding fields is the number assigned for the purposes of production in this case. Nothing herein, however, shall require any party to capture in the objective coding fields any prior Bates number that appears on a hard copy document when a new Bates number is assigned in this case.

(h) <u>Data Load Files/Cross-Reference Files</u>. The parties will provide with their productions a load file in standard delimited text format, as described in Exhibit C, and showing the Bates number of each page and the appropriate unitization of the documents. Every file in each production must be referenced in the production's corresponding load file. The total number of files referenced in a production's load file should match the total number of files in the production. Each party shall consistently use the same load file format for all of its productions, unless expressly agreed otherwise by the opposing party.

(i) <u>Bates numbering</u>. Each party shall assign to each page of its production of documents and ESI a Bates number that is a unique ID with a prefix that can be readily attributed to the producing party. Bates numbers should be a combination of an alpha prefix that identifies the producing entity along with a 10 digit number (e.g., TYLER0000000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any,

will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

In the event documents are produced on a rolling basis, the parties shall use consecutive Bates numbering. Productions should contain sequential Bates numbers with no gaps. A unique production volume number will be used for each production. If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

(j) <u>Parent-child relationships for ESI</u>. Each party shall preserve and appropriately reflect in a load file the association between an attachment and its parent document for ESI to the extent that such association is reasonably ascertainable. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s) and the attachment(s) are produced in immediate sequential order after the parent document. Any parent or child document withheld on the basis of privilege, but where the remaining document(s) are produced, shall be replaced with a TIFF placeholder identifying the document as withheld and the basis for the privilege, and an identifying Bates number allowing the document to be located on the privilege log.

(k) <u>Time Zone</u>. Each party shall use Coordinated Universal Time (UTC) or Greenwich Mean Time (GMT) when processing ESI.

2.2 <u>Natives</u>. The parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request.

2.3 <u>Load Files</u>.  The parties agree that all load files associated with any production by any party shall conform to the standards set forth in Exhibit C and the other requirements in this Stipulation.

2.4 <u>Proprietary Software</u>. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and confer to minimize any expense or burden associated with the production of the ESI while still allowing for efficient and effective review by the requesting party.

**3. DE-DUPLICATION**

3.1 <u>Electronically Stored Documents</u>. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. With regard to ESI, Defendants may de-duplicate globally or across more than one custodian. Duplicate e-mails or files held in different file path locations and/or by different custodians may be excluded. If duplicates are excluded, the load file must include the de-duplication table metadata that shows each custodian and full file path from which a copy of the produced document was excluded. De-duplication shall not break apart families and shall be performed at a family level. The producing party agrees that the presence of a custodian's name contained in "all custodians" in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

**4. MISCELLANEOUS**

4.1 <u>Document Storage</u>. During the pendency of this litigation, the parties shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the opposing parties and, in particular, to preserve the originals of all notebooks or other handwritten documents as to which there may be issues of legibility of all or any part of the production copy

and to preserve the original native format version of any ESI produced in non-native format. Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

    4.2    <u>No Waiver</u>.    This protocol shall not constitute a waiver of any objection to the ultimate discoverability, privilege, admissibility or relevance of any records addressed herein.

Stipulated to:

  /s/ Barry M. Landy
Barry M. Landy (MN Bar #0391307)
**CIRESI CONLIN LLP**
Barry M. Landy (MN #0391307)
Kyle W. Wislocky (MN #393492)
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
Phone: (612) 361-8200
Fax: (612) 361-8217
 E-mail: BML@ciresiconlin.com
 E-mail: KWW@ciresiconlin.com

  /s/ Beth W. Petronio
Beth W. Petronio (TX #00797664) (admitted pro hac)
**K&L GATES, LLP**
1717 Main Street, Suite 2800
Dallas, TX 75201
Telephone: (214) 939-5500
Fax: (214) 939-5849
E-mail: beth.petronio@klgates.com

**ATTORNEYS FOR DEFENDANT
TYLER TECHNOLOGIES, INC.**

  /s/ Jason J. Stover
ANTHONY C. PALUMBO
**ANOKA COUNTY ATTORNEY**
Jason J. Stover (MN #30573X)
Christine Carney (MN #0319491)
Assistant Anoka County Attorneys
2100 Third Avenue, Ste. 720
Anoka, MN 55303-5025
Telephone: (763) 324-5457
Email: jason.stover@co.anoka.mn.us
Email: christine.carney@co.anoka.mn.us

**ATTORNEYS FOR COUNTY OF ANOKA**