## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

County of Anoka,                                    Case No. 20-cv-1524 PAM/ECW

                        Plaintiff,

        v.                                          **ORDER**

Tyler Technologies, Inc.,

                        Defendant.

---

        This case is before the Court on the parties' Stipulation for Order Governing the

Production of Electronically Stored Information ("ESI") (Dkt. 15).  Having considered

the Stipulation and for good cause shown, **IT IS ORDERED** that the following shall

govern the production of ESI:

## 1.      SCOPE OF PRODUCTION OF DOCUMENTS AND ESI

        1.1     <u>File Types</u>. The parties shall have no obligation to collect, review, or

produce any ESI with a file type enumerated in Exhibit A.

        1.2     that one or more responsive documents are not discoverable because it is

subject to the attorney-client communication privilege or work product doctrine, or

otherwise not discoverable on the basis of a recognized protection or privilege

(collectively, the "privileges" and each a "privilege"), the party shall produce within

forty-five (45) days of each production of the documents a log of documents withheld on

the basis of privilege treating each document withheld separately, that sets forth: (a) the

1

nature of the privilege(s) or other protection claimed; (b) the factual basis for the

privilege(s) or other protection claimed; (c) the date of the document; (d) the name of the

author(s)/addresser, addressee(s) and all recipients of the document (with respect to e-

mail threads, the author/addresser, addressee(s) and recipients of the primary email will

be set forth in the author/addresser, addressee(s) and recipient fields of the log) and

whether any person identified is an attorney or an employee of any Defendants' legal

department; (e) a description of the general subject matter contained in the document and

the type of document (*e.g.*, letter, memorandum, handwritten notes) sufficient to allow

the receiving party to assess the claimed Privilege and/or to allow the Court to rule upon

the applicability of the claimed protection; and (f) the custodian of the document. If

additional time is required to generate a privilege log, the parties shall meet and confer on

the timing of the log and any remaining dispute shall be submitted to the Court for

resolution.

The parties, however, agree that privileged communications solely between the

parties and their outside litigation counsel retained for purposes of this or related

litigation, solely between and among outside litigation counsel retained for purposes of

this or related litigation, or documents prepared solely by or for outside litigation counsel

for the parties retained for purposes of this or related litigation, and created after January

1, 2018, do not need to be included on the log. Documents dated after January 1, 2018,

and determined to be non-privileged and responsive after review, even if between the

parties and outside litigation counsel, must still be produced. The parties reserve the right,

for good cause shown, to revisit the scope of communications that need to be logged or

need not be logged based on the scope of merits discovery and the burden of logging such communications, which cannot be determined as of the date of this stipulation. Notwithstanding the assertion of an objection, any purportedly privileged document containing non-privileged matter must be disclosed with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself, and also listed on the privilege log to be provided pursuant to this paragraph. A party need include only one entry on the log to identify a single E-mail Thread (as defined below) that contains multiple e-mails with privileged information in the same document; provided, however, that disclosure must be made that such e-mails are part of an e-mail thread and that if any information contained in such thread is not privileged, the remainder of e-mail thread must be produced in redacted form.

After the receipt of a privilege log, any Party may dispute a claim of privilege, however, prior to any submission to the Court for an *in camera* review, the Party disputing a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons for its assertion that the documents are not privileged. Documents with the same reasons for assertion of non-privilege may be grouped. Within seven (7) business days, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege. The Party seeking to support the claim of privilege may request an extension of the 7-day time period from the contesting Party based upon a good faith representation that the volume of documents contested is too large to address within the 7-day time frame, such extension not to be unreasonably withheld. If the Parties cannot agree to an extension, the

issue may be expeditiously brought to the Court for resolution via telephonic conference. The Parties will then meet and confer in good faith as to the claims of privilege. If agreement cannot be reached after the meet and confer, any party shall promptly submit the dispute to the Court, as provided by the Court's Local Rules and procedures, for a determination as to privilege. Redacted documents shall be logged in the same manner and time frame as privileged documents.

      1.3    <u>Redactions</u>. If a party deems it necessary to redact any material for privilege or other reason, the Producing Party shall either produce the redacted file in the reasonably useable form set out in Section 2 or shall produce the redacted copy in native format. Documents that are to be produced in native format, but that require redactions, may be produced as TIFF images with the relevant portions redacted, or if a TIFF image production is not practicable (e.g., the file is an audio or video file or spreadsheet), the producing party shall produce a copy of the native file with the relevant portions replaced with "REDACTED" or a similar mark. If modification of a native file is required for redaction purposes, metadata information should be extracted prior to modification such that metadata information associated with that file should remain unchanged, unless it also requires redaction.

      1.4    <u>E-mails and Attachments</u>. The parties agree that if any e-mail is responsive to Plaintiff's document request, all attachments to that e-mail shall be deemed responsive to that request. Likewise, if any attachment to an e-mail is responsive to Plaintiff's document request, all portions of the e-mail to which it is attached and all other attachments to that e-mail shall be deemed responsive to that request. To the extent that a

Defendant reasonably determines that e-mail or related attachments that are responsive to Plaintiff's document request are not discoverable because they are subject to a Privilege, Defendant shall produce a log treating each e-mail and attachment withheld separately that sets forth the information required by Paragraph 1.2 above, subject to the logging limitations of Paragraph 1.2 above.

E-mail Threads are e-mail communications that, within the same e-mail string, contain prior or lesser-included e-mail communications that also may exist separately in the Party's electronic files. A most inclusive e-mail thread is one that contains all of the prior or lesser-included e-mails, including attachments, for that branch of the e-mail thread. The Producing Party will produce the most inclusive e- mail thread and all prior or lesser included e-mail threads that were collected and identified as responsive and not privileged.

1.5    <u>OCR</u>. OCR software should be set to the highest quality setting during processing. Documents containing foreign language text will be OCR'd using the appropriate settings for that language, e.g., OCR of German documents will use settings that properly capture umlauts. Settings such as "auto-skewing" and "auto- rotation" should be turned on or off during the OCR process, as appropriate, in order to produce the best OCR results possible.

**2.    PRODUCTION FORMAT**

2.1    The parties agree that that they will produce all documents and ESI in the imaged format as set forth below:

(a)    TIFFs. Except as otherwise provided for herein, the parties will produce all documents and ESI as black-and-white, single page Group IV TIFFs, 300 DPI and 8 ½ x 11 inch page size. Each image file will have a unique file name that shall be the Bates number of the page except for images originally in color. Documents or records produced in non-native format and containing color (for example, graphs, pictures, or color marketing materials) will be produced in the above format but in color or as color JPEG files. This provision does not apply to documents solely containing color logos, signatures, watermarks, or letterhead. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Production ("Bates") numbers shall be endorsed on the lower right corner of all images.  This number shall be a unique, consistently formatted identifier that will:

1.    be consistent across the production;

2.    contain no special characters; and

3.    be numerically sequential within a given file.

(b)    Production of Specific File Types. When producing files in native format, the native files are to be named with a unique production number assigned to the document, with the original filename to be included in the FileName metadata field. For each natively produced file, a single-page TIFF placeholder should be included. The placeholder should contain the filename of the document as well as language indicating that the document was produced in native form, and it should be endorsed with the confidentiality legend and Bates number.

Except where ESI contains text that has been redacted under assertion of privilege or other protection from disclosure, full extracted text will be provided in the format of a single *.txt file for each file (i.e., not one *.txt file per *.tif image). Extracted text shall include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns, and rows. Where ESI contains text that has been redacted under an assertion of privilege or other protection from disclosure, the redacted *.tif image will be OCR'd and file- level OCR text will be provided in lieu of extracted text. Searchable text will be produced as file-level multi-page UTF-16LE or UTF-8 text with Byte Order Mark files, in a best effort to preserve the integrity and full character set for any non-English text, and with the text file named to match the beginning production number of the file. The full path of the text file must be provided in the *.dat data load file. The text file shall contain image keys/Bates numbers for each page. The parties will produce the following specific file types in the following manner:

1. <u>E-mails</u>: E-mails will be produced with the BCC line displayed.

2. <u>Word Processing Files</u>: The parties will produce word processing files, including without limitation Microsoft Word, as TIFF images with the TIFF image displaying all information contained in the original file, including but not limited to tracked changes, hidden text, and comments.

3. <u>Spreadsheets</u>: The parties will produce spreadsheets in native format with a TIFF placeholder.

4.     <u>Presentation Files</u>: The parties will produce presentation files, including without limitation Microsoft PowerPoint files, in native format with a TIFF placeholder. If produced in TIFF due to redactions then the TIFF image will display all information contained in the original file, including but not limited to comments, hidden slides, speakers' notes, and similar data in such files.

5.     <u>Databases, Structured, Aggregated or Application Data</u>: To the extent there are any dynamic databases for which document extraction would be substantially burdensome and/or the extracted format is not usable, the parties will meet and confer to discuss how the data should be produced. If one or more other formats of electronically-stored information come to light that due to their complex nature may not be appropriate for production as TIFF images, the parties will meet and confer in good faith to discuss a mutually agreeable production format or formats. In connection with any such meet and confer, Plaintiffs may request reasonable information to evaluate the best method and format of production and Defendants shall respond reasonably and in good faith to any such request.

6.     <u>Dates and file-paths</u>: Documents produced as TIFF files containing auto-populating fields, such as dates and file-paths, shall be produced, wherever possible, with the field code visible on the rendered TIFF (*e.g.*, #DATE, or equivalent), as opposed to having the field code populated at the time that the document was imaged. The metadata shall not be changed.

7.     <u>Compressed Files</u>: Compressed file types (i.e., .CAB, .GZ, .TAR .Z, .ZIP) shall be decompressed in a iterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual files.

8.     <u>Encrypted Files</u>: The Producing Party will take reasonable steps, prior to production, to unencrypt any discoverable electronically stored information that exists in encrypted format (*e.g.*, because password-protected) and that can be reasonably unencrypted.

9.     <u>SAS Files</u>: The parties will produce SAS files in their native format and not as files converted to excel or .csv.

10. <u>Other Files</u>: Audio files, video files and other files not suitable for production as TIFF images will be produced in native format.

(c)     <u>Scanned Documents</u>.        In scanning hardcopy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, hardcopy documents should be logically unitized). The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

In the case of an organized compilation of separate hardcopy document—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately, but the relationship among the documents in the binder should be reflected in proper coding of the family fields set out below.

(d)     <u>Extracted text and OCR-Text Searchable Files</u>. For ESI, extracted text shall be produced directly from the native file where technically possible. Documents for which extracted text cannot be rendered, will be OCR'd to provide searchable text. The file name of each text file should correspond to the file name of the first TIFF file of the document with which it is associated, including the corresponding Bates number. The text files will not contain redacted portions of the documents.

(e)     <u>Embedded Objects</u>. OLE embedded objects (embedded MS Office files, etc.) shall be extracted as separate files and treated as attachments to the parent document unless the containing file is produced in native format, in which case the embedded objects shall be produced as part of the native file. The obligation to separate out embedded objects shall not apply to signature blocks.

(f)     <u>Foreign Language Documents</u>. Hard-copy documents and ESI that contains languages other than English, in whole or in part, shall be produced in the original language(s), along with all known existing translations of the document.

(g)     <u>Metadata and Objective Coding Fields</u>. The parties shall provide the Metadata fields set forth in Exhibit B for all ESI to the extent such fields exist for that document. The Bates number identified in objective coding fields is the number assigned for the purposes of production in this case. Nothing herein, however, shall require any party to capture in the objective coding fields any prior Bates number that appears on a hard copy document when a new Bates number is assigned in this case.

(h)     <u>Data Load Files/Cross-Reference Files</u>. The parties will provide with their productions a load file in standard delimited text format, as described in Exhibit C, and showing the Bates number of each page and the appropriate unitization of the documents. Every file in each production must be referenced in the production's corresponding load file. The total number of files referenced in a production's load file should match the total number of files in the production. Each party shall consistently use the same load file format for all of its productions, unless expressly agreed otherwise by the opposing party.

(i)     <u>Bates numbering</u>. Each party shall assign to each page of its production of documents and ESI a Bates number that is a unique ID with a prefix that can be readily attributed to the producing party. Bates numbers should be a combination of an alpha prefix that identifies the producing entity along with a 10 digit number (e.g., TYLER0000000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

In the event documents are produced on a rolling basis, the parties shall use consecutive Bates numbering. Productions should contain sequential Bates numbers with no gaps. A unique production volume number will be used for each production. If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

(j)    <u>Parent-child relationships for ESI</u>. Each party shall preserve and appropriately reflect in a load file the association between an attachment and its parent document for ESI to the extent that such association is reasonably ascertainable. Bates numbering of a parent document and any attachments shall be sequential such that a parent document has the lowest value Bates number when compared to its attachment(s) and the attachment(s) are produced in immediate sequential order after the parent document. Any parent or child document withheld on the basis of privilege, but where the remaining document(s) are produced, shall be replaced with a TIFF placeholder identifying the document as withheld and the basis for the privilege, and an identifying Bates number allowing the document to be located on the privilege log.

(k)    <u>Time Zone</u>. Each party shall use Coordinated Universal Time (UTC) or Greenwich Mean Time (GMT) when processing ESI.

2.2    <u>Natives</u>. The parties agree that to the extent any party seeks production in native format of specifically identified ESI produced originally in TIFF form for good cause shown, the producing party shall respond reasonably and in good faith to any such request.

2.3    <u>Load Files</u>.    The parties agree that all load files associated with any production by any party shall conform to the standards set forth in Exhibit C and the other requirements in this Stipulation.

2.4    <u>Proprietary  Software</u>.    To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary software, the parties shall meet and

confer to minimize any expense or burden associated with the production of the ESI while still allowing for efficient and effective review by the requesting party.

**3.      DE-DUPLICATION**

3.1      <u>Electronically Stored Documents</u>. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. The Producing Party need produce only a single copy of responsive Duplicate ESI. With regard to ESI, Defendants may de-duplicate globally or across more than one custodian. Duplicate e-mails or files held in different file path locations and/or by different custodians may be excluded. If duplicates are excluded, the load file must include the de-duplication table metadata that shows each custodian and full file path from which a copy of the produced document was excluded. De-duplication shall not break apart families and shall be performed at a family level. The producing party agrees that the presence of a custodian's name contained in "all custodians" in the metadata for a particular document is evidence that the custodian possessed that document in his/her custodial file.

**4.      MISCELLANEOUS**

4.1      <u>Document Storage</u>. During the pendency of this litigation, the parties shall make reasonable efforts to preserve the originals of all hard copy and ESI documents produced to the opposing parties and, in particular, to preserve the originals of all notebooks or other handwritten documents as to which there may be issues of legibility of all or any part of the production copy and to preserve the original native format version of any ESI produced in non-native format. Each party reserves the right to request to inspect such original documents of the opposing party or parties, which request shall not be

unreasonably denied. If such request to inspect is denied, the party may seek relief from the Court.

      4.2    <u>No Waiver</u>.   This protocol shall not constitute a waiver of any objection to the ultimate discoverability, privilege, admissibility or relevance of any records addressed herein.

Date August 19, 2020

                    <u>*s/Elizabeth Cowan Wright*</u>
ELIZABETH COWAN WRIGHT
United States Magistrate Judge

## <u>EXHIBIT A</u>

**ESI File Types Not To Be Collected**

1. All file types on National Institute of Standards and Technology (NIST) database of software applications;

2. All executable files;

3. All system files;

4. All files in the C:\Windows directory (*e.g.*, LOG, DAT, etc. files);

5. To the extent any other file types are excluded from the production, the producing party shall adequately notify the opposing party.

**EXHIBIT B**

**Metadata Fields to Be Provided With Productions**

The term "scanned files" refers to document that are in hard copy form at the time of collection and have been scanned into TIFF images. The term "Emails" and "Edocs" refers to files that are in electronic form at the time of their collection.

| Field Name | Field Description | Email | Edocs Files | Scanned Files |
|---|---|---|---|---|
| Custodian | Name of custodian(s) of email(s) or file(s) produced (Last Name, First Name format) as available | x | x | x |
| All Custodian(s) | Name(s) of other custodian(s) that possessed the electronic file (Last Name, First Name format) as available; multiple custodians separated by semicolon | x | x | |
| BegBates | Beginning Bates# (including Prefix) | x | x | x |
| EndBates | Ending Bates# (including Prefix) | x | x | x |
| BegAttach | Beginning Bates number of the first document in an attachment range, as available | x | x | x |
| EndAttach | Ending Bates number of the last document in an attachment range, as available | x | x | x |
| ParentID | Parent Bates, including Prefix (only in Child records), as available | x | x | x |
| AttchIDs | Child Document list — Start Bates of each Child (only in Parent records), as available | x | x | x |

| Field Name | Field Description | Email | Edocs Files | Scanned Files |
|---|---|---|---|---|
| From | From field extracted from an email message | x | | |
| Author | Author field extracted from the metadata of a non- email document | | x | |
| To | To or Recipient extracted from an email message | x | | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | x | | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | x | | |
| EmailSubject | Subject line extracted from an email message | x | | |
| Filename | File name — Original name of file as appeared in original location | | x | |
| Other Filename(s) | Name of electronic file for other custodian(s) | | x | |
| FilePath | Source filepath for Custodian | x | x | |
| AllPaths | Source filepath(s) for other custodians(s) | x | x | |
| EmailFolder | Source folder for email | x | | |
| Title | Title field extracted from the metadata of a non-email document | | x | |
| DateSent | Sent date of an email message (mm/dd/yyyy format)(a given email will have either a DateSent or Date Rcvd, but not both) | x | | |
| DateRcvd | Received date of an email message (mm/dd/yyyy | x | | |

| Field Name | Field Description | Email | Edocs Files | Scanned Files |
|---|---|---|---|---|
| | format)(a given email will have either a DateSent or Date Rcvd, but not both) | | | |
| DateCreated | Date that a non-email file was created (mm/dd/yyyy format) | | x | |
| TimeSent | Time e-mail was sent (hh:mm:ss format)(a given email will have either a TimeSent or Time Rcvd, but not both) | x | | |
| TimeRcvd | Time e-mail was received (hh:mm:ss format)(a given email will have either a TimeSent or Time Rcvd, but not both) | x | | |
| Confidentiality | Confidentiality Designation | x | x | x |
| ExtractedText | File path to Extracted Text/OCR File | x | x | x |
| Native File Path | Path to native file, including Production filename (e.g., Original filename with Bates number, as applicable (for native files only) | x | x | |
| ProdVolume | Identifies production media deliverable | x | x | x |
| DocExt | File extension for the native version of the document whether produced as a native or TIFF image | x | x | |
| Pages | Number of pages in the produced document or electronic file (not applicable to native file productions). | x | x | x |

| Field Name | Field Description | Email | Edocs Files | Scanned Files |
|---|---|---|---|---|
| LastAuthor | User last saving the document. | | x | |
| DateLastMod | Date that non-email file was modified as extracted from file system metadata. | | x | |
| MD5 (or SHAI) HashValue | Unique value assigned to document for duplicate identification. | x | x | |
| FileSize | Size of application file document/email in bytes | x | x | x |
| MasterDate/EmailDateSort | Master sort date (e.g., for email attachments, the sent date). | x | x | |
| Language | Identifies the primary language of the document. | x | x | |
| DocType | Identifies the type of document. | x | x | x |
| EmailImportance | "High," Low," or "Normal" (or equivalent if an email client other than Outlook was used), as available | x | | |

**EXHIBIT C**

**Load File Standards for Party Productions**

ESI and hard copy document images will be produced as set forth above with appropriate load files, meeting the following specifications:

1.  A page-level Opticon load file will accompany each production and will include the Bates number of each page, identification of the corresponding image, and the appropriate unitization of each document. (Sample in textbox to the right).

    > OPTICON SAMPLE (Load file)
    > 99529,VOL001,\IMAGES\00\00\00143221.TIF,Y,,,2
    > 99529,VOL001,\IMAGES\00\00\00143222.TIF,,,,
    > 124296,VOL001,\IMAGES\00\00\00143223.TIF,Y,,,3
    > 124296,VOL001,\IMAGES\00\00\00143224.TIF,,,,
    > 124296,VOL001,\IMAGES\00\00\00143225.TIF,,,,

2.  A document-level database load file (.DAT) will also accompany each production. This file will be in delimited text format and the first line will identify the fields contained in each subsequent line. This load file will contain the unitization and metadata fields listed in Exhibit B to the ESI stipulation to the extent they are available for and applicable to each document. The delimiters used will be "Concordance Standard Delimiter" characters as follows:

    a.  Field delimiter = Column (ascii 020)

    b.  String Value delimiter = Quote (ascii 254)

    c.  Newline delimiter = (ascii 174)

    d.  Multi-Value delimiter = (ascii 059)

```
Sample .DAT - Database Load File:

1  þPRODBEGDOCþ┃þPRODENDDOCþ┃þPRODBEGATTþ┃þPRODENDATTþ┃þAUTHORþ┃þRECIPIENTþ┃þCCþ┃þBCCþ┃þSUBJECTþ┃þSENTDATEþ┃þSENTTIMEþ
2  þABB0051219þ┃þABB0051219þ┃þABB0051219þ┃þABB0051230þ┃þJones, Scott </O=ABC-Co/OU=USA - NY, NY/CN=RECIPIENTS/CN=JONES
3  þABB0051220þ┃þABB0051230þ┃þABB0051219þ┃þABB0051230þ┃þþ┃þþ┃þþ┃þþ┃þþ┃þþ┃þþ
4  þABB0051231þ┃þABB0051231þ┃þABB0051231þ┃þABB0051231þ┃þGert, Barry </O=ABC-Co/OU=USA - NY, NY/CN=RECIPIENTS/CN=GERT>þ
5  þABB0051232þ┃þABB0051232þ┃þABB0051232þ┃þABB0051247þ┃þCont. Barry </O=ABC-Co/OU=USA - NY, NY/CN=RECIPIENTS/CN=CERT>
```

3.  Native files will be produced in folders separate and distinct from the folders containing documents produced as TIFFs and will be accompanied by a cross- reference file containing the Bates number of and path to the native file as well as the metadata fields listed in Exhibit B to the extent they are available for and applicable to each document. The cross- reference file will use the delimiters identified in (2) above.

4.  The .dat files should be encoded in UTF-16LE or UTF-8, in a best effort to preserve the integrity and full character set in use for any Japanese or other non- English text.

5.    <u>Production Media</u>. Unless otherwise agreed, documents and ESI will be produced on encrypted optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Any production of ESI greater than 10 gigabytes shall be by hard drive. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (e.g., ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the producing Party, and the following information: volume name, date of delivery, a technical contact (preferably whomever created the media item) so that the receiving party can resolve extraction issues should they arise, and where feasible, the Bates number range of the materials contained on the media item or other similar description of the item.

6.    <u>Encryption of Production Media</u>. To maximize the security of information in transit, any media on which documents or electronic files are produced may be encrypted by the producing Party. In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media. The encryption method shall be disclosed prior to data transmission to ensure the receiving party has appropriate access to the encryption technology being used. The party will provide a named point of contact, and phone number so that any encryption or data access questions can be quickly and easily resolved. The receiving parties in this matter are on notice that certain data produced may originate from custodians in the European Union and the receiving parties therefore agree to follow the strictest security standards in guarding access to said data.

7.    <u>Designation of Custodians.</u> Each production shall be accompanied by a notice of production. In such notice, the Producing Party shall identify the source(s) of ESI that contain responsive documents (e.g., custodial files, custodial location, or database productions). All productions will be produced with an index identifying the Bates range of each production. Productions otherwise need not include indication of the document request(s) to which a document may be responsive.

8.    <u>Inadvertent Production.</u> The inadvertent production of any material constituting or containing attorney-client privileged information or work-product, or constituting or containing information protected by applicable privacy laws or regulations, shall be governed by provisions contained in the Protective Order entered in this action.